The argument is 20-1419 Wirtgen America v. Caterpillar. Mr. Ogden, whenever you're ready. Thank you, Your Honor. Seth Ogden on behalf of Wirtgen America. May it please the Court. The claims of the 395 patent require switchover without any erratic alteration. And that is accomplished by switching over from control to control. In other words, the claims require continuous control throughout the switching process. They also require that the second selected subset be functional to avoid any erratic alteration. These are critical differences between Brabeck's concrete screed, which Caterpillar relies upon to teach a switching system, and the roadmilling machines of the claims and of Davis that make Brabeck's teachings inapplicable to establish obviousness. The combination of Davis and Brabeck only detects a signal loss. In other words, a loss of control. And then attempts to reinstate control by switching to a new sensor. This results in erratic alteration. It is undisputed. This is Judge Proust. If I could just interrupt you with a question in light of the limited time we have. I guess, reading the brief, I must tell you I was a little confused because you present this case as an application of claim construction, not about claim construction itself. And it seems like you probably got to do that because you didn't request particular claim construction. But it seems to me that what you're advocating here about choosing centers and application-related reasons aren't the plain meaning of the claims. So, they're read in from discussion about the specification and some expert testimony. So, if I'm right about that, shouldn't you have requested this claim construction if those, how you're construing the claims here on appeal doesn't necessarily correspond to the plain meaning of the claims? Well, Your Honor, I would disagree. Yes, claim construction would need to be requested. And I believe that claim construction was requested because the Board issued in its final written decision for the first time a claim construction with respect to the second selected, or two selected subset, as opposed to it did issue a claim construction after, in its institution decision for during the milling operation. So, there was a claim construction given. And I think the argument that we're making is after seeing how, what that claim construction was and how it was applied for the first time in the final written decision, that claim construction needs a claim construction. And that is where we're... Well, here's my problem with that is that, you know, you say it's really kind of a question of grammar. The real question is, what does during milling relate to? I mean, does during milling say that that's when the sets are chosen? Or does it say that's when the chosen signals make a difference? I agree that there is a grammar question. And that is why a skilled artisan would have looked to the remainder of the claim. And what they would have seen is the, without any erratic alteration of the at least one adjustment value. And they would understand that in a situation such as Brabec, where you are selecting based on a predetermined priority that occurs before, in Brabec's case, screening has begun, that that's going to allow for a situation where you will have an erratic alteration. And another thing that a skilled artisan would have understood is looking to column two. It explains that the switchover device enables a preselection of the other sensor and the presetting of operating parameters, set values and actual values of the other preselected sensor. And then it goes on to say, and this is column two at line 19, in this way, a machine operator can already prepare the switchover of the sensors during the milling operation. And so it explains, and a skilled artisan would have recognized that teaching, as well as looking to all of the embodiments that are disclosed, which all involve a device that permits, indication and setting devices that permit selection of the second selected subset during the milling operation. So you want to say that even if the claim language doesn't expressly require that the selections occur during the milling operation, that we should take all the embodiments and say, because there's no embodiments in the patent, that that's what we should assume is happening? No, Your Honor. What we want to be examined is that the board did not give any scope to the without any erratic alteration of the at least one adjustment value, because they chose to ignore that in BRABAC this selection, based on a predetermined priority, cannot meet the without any erratic alteration of the at least one adjustment value, and that a skilled artisan reading the entire... This is Judge Prowse. What is an erratic alteration of the adjustment value? Your briefing in the specification don't make it very clear what this even is, and yet you've argued that it's a matter of law, erratic alteration happens during the sensor switchover in this prior art combination. And I don't understand what that means. Yes, Your Honor. So there are two portions of the specification that, when read together, explain what an erratic alteration is. So in column one, looking to the background, at line about 44, it explains that faults in the work result could occur because no control is affected during that time. And then if you move over to column two, and it's in the paragraph that starts at line 58, it explains that if the alteration of the adjustment value is not affected in an unevenness of the milled road surface is not adversely affected. So an erratic alteration is an alteration that occurs in the controller that results in an uneven milled road surface, or also described as a fault in the work result. Where did you argue this before the Board? Okay. So this was discussed before the Board in Appendix 389. There's a section discussing why Caterpillar has failed to meet their burden to show that the elements of Claim 1 and 11 are found in the prior art. And there, through the talisees, work can emphasize the importance of control, switching from control to control, and the importance of the selected subsets. And that goes part and parcel with the requirement that there be no erratic alteration. And Appendix 364, BRAVEC, is discussed... But you say it goes part and parcel, but did you expressly say that? Your Honor, I think we described several situations. I'm not sure that the words I just used were expressly written into the briefing, but we described a situation in which erratic alteration results because the selection is a predetermined priority in BRAVEC. And we explained that wouldn't meet the selected subset limitation because it will cause an erratic alteration. And so, with respect to that, you can take a look at Appendix 386, where we explained, and explained, it would be undesirable to automatically switch the sensors because it would risk adversely affecting the work product. Rather, the operator would want to stop the milling operation because there are too many conditions where specific sensors are relied upon for proper road milling. And Caterpillar's expert actually acknowledged that's also, that's an Appendix 3226. Yeah, and the board rejected that, made a factual finding that that is not... Judge Plater? Hello? Can you hear me now? I can hear you. Can you hear me? I can hear you. Am I back on? Yes. And you can be heard by everyone. Okay. Chief Judge Brist, can you hear Judge Plager? Yes, I can. And Mr. Ogden, can you hear Judge Plager? Yes, I can. Judge Plager, can you hear everybody? I can hear everybody. And I thank AT&T for getting itself straightened out.    Okay. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Okay. Thank you. Thank you. Thank you. Judge O'Malley? Okay. Now we're going back. And I asked where you had made the argument below to the board about this... erratic alteration of the at least one adjustment value and why that would make combining Brabeck and Davis inappropriate. And I don't see the erratic adjustment discussion. And you conceded that you didn't use those exact words. But so I don't see it in any of the pages that you're citing me to. So Your Honor, what we discussed was that with respect to the second selected subset, and so that's getting back to the claim construction argument. So first, let me back up. I think before we were cut off, you had said that the board rejected that argument. Yes. So the board rejected the factual argument with respect to Orkin's motivation to combine. The board found that there would be tradeoffs and that replacing an unused sensor, replacing a failing sensor would be a tradeoff that one might take. And there are issues with that that I will address in a minute. But with respect to the second portion, they did reject the motivation to combine, but they never addressed the argument that selecting a second selected subset based on a predetermined priority would result in the potential to select a sensor that would not be functional to avoid an erratic alteration. And that was throughout the arguments that were made with respect to the switching based on Brabeck. And so that goes to why we argue that this claim construction for second selected subset is incorrect. Because in order to have a claim construction that would be, or an application of their claim construction that would be correct, it would have to be applied in a way that the second selected subset avoids any erratic alteration of the at least one adjustment value. And so that's where the... Claim construction on appeal, Mr. Ogden. We're changing, we're challenging the application of the claim construction first issued by the board in its final written decision. And what we're saying is, but in a way that they applied the construction, they didn't give it a proper scope as it should be given under a skilled artisan's view of the claim language. And so... Counsel, can I ask a question? Where in the board's 78 page opinion should we find a discussion of this very point? Of the erratic alteration point, Your Honor? Yes. Assuming you raised it in some intelligible way, it's not discussed in the board's 78 pages? Your Honor, it is discussed. And so first, if we take a look at Appendix 14, there the board recognizes the emphasis on the importance of the erratic alteration. And what we see there is that they note that Claim 1 also emphasizes that the censor swap occurs...  Is that my tone, Your Honor? I've got Appendix 14. We're on Appendix 14. Are you reading from? I'm quoting where it says at the very bottom, and did I hear my time, Your Honor? I couldn't... Yeah. You can answer Judge Blake's question. Okay. Cool. Yes, Your Honor. So Claim 1, at the bottom there, Claim 1 also emphasizes that the censor swap occurs not only without interruption of the milling operation, but also without any erratic alteration of the at least one adjustment value, which is a concern when swapping censors during the act of milling. And then when we return to Appendix 23, the only thing the board ever discusses is that Petitioner contends that BRAVE Act discloses an automatic switchover to Censor 42 without interrupting the machine operation or any erratic interruption or abrupt change in the adjustment value. And that's the entirety of what the board ends up saying about the erratic interruption. So they understood that there was an argument over this erratic interruption. It was also discussed at the oral argument at Appendix 740. So they addressed it, but they just glossed over it after recognizing the importance of that claim limitation. Well, because you put the whole discussion of erratic alteration as going hand-in-hand with whether it occurs during the switchover, occurs during the milling operation or not. I mean, that's the only way you argued it. Your Honor, no, we argued that the second selected subset must be selected during the milling operation. Right. That a skilled artisan would understand, yes. And that's what the board rejected, right? The board rejected that, but in rejecting that, they failed to recognize that Brabeck's system would cause an erratic alteration and that a skilled artisan would understand that the scope of, based on the intrinsic evidence, that the scope of second selected subset requires that it be selected during the milling operation, otherwise you could... Choosing Brabeck, you don't have to choose Brabeck or be motivated to choose Brabeck because it would solve some other problem that you're recognizing, but they said that there was a motivation to choose Brabeck because of the ability to use the sensors, right? I mean... Yes, they did... Go ahead. Sorry. Go ahead. I mean, your motivation... Yes, Your Honor. ...could come from anywhere. Yes, Your Honor. And at this point, we're not arguing the motivation to combine and their rejection of that. What we're arguing is that their final construction of second selected subset that only was given in their final written decision, the scope of that construction is not consistent with what a skilled artisan would have understood reading the claims in their entirety, including the without any erratic alteration language. There's a lengthy discussion council in the appendix on pages 24 and 25 of the switchover issue, which is really the underlying problem in this erratic operation. Apparently, you had to stop the milling in the old system and you're claiming that your it's automatic. That is, you don't... Did the sensors shift themselves? You don't have to stop and shift them. And that is a lengthy discussion in that part of the opinion in which they find that the prior art dealt with it in a way that makes your claim obvious. What is it you're saying? Are you saying something different from that discussion? With respect to that discussion, what we're saying is that they're wrong as a matter of law that a skilled artisan would have looked at this claim and thought that switching over... They're correct that the switchover occurs during the milling operation. And they're wrong about when the selection has to occur to avoid any erratic alteration and that a skilled artisan would have understood that selection must occur during the milling operation. And that's because Braybeck is a stationary device. So Braybeck is a different device and the screen just moves around on a boom. So in Braybeck, that solution works because the operator can look around before he starts screening and he can say, what might I run into that I need to avoid? I can set this priority. A milling machine is a 50,000-pound device, many times larger, that's traveling down the roadway with a 20,000-pound drum attached. And because it's propelling down the roadway, it's a different situation because you don't know what you're going to encounter that would require the switchover. And there are... Counsel, your argument is not that you didn't get heard and you didn't get considered. Your argument is simply you disagree with the way the board resolved the question. Is that correct? We disagree with the scope of the board's claim construction and its final written decision. That was the first time that we received that claim construction. And we characterize that as its application because it's the scope of how it described it. A subset that it's chosen could be right if you gave it the correct scope. But they didn't... Well, I'm... They made the scope too broad. Counsel, I just have one last question because I know your time is up. But I'm just very confused. Are you saying that the board should have considered Braybeck's operation in deciding what the appropriate claim construction would be? No, not at all, Your Honor. What I'm saying is that the board should have considered how a skilled artisan would have read this entire limitation. I think it's... I don't remember what they call it, 1G. It starts at about line 32 of column seven and understood that a skilled artisan would have viewed the selection to avoid any erratic alteration as requiring a selection during milling. It is also supported by the specification, which a skilled artisan also would have looked to understand this. So, no, we are not saying that a skilled artisan would have necessarily looked to Braybeck to construe the claims in the 395 patent. Okay. Thank you. We'll reserve... We'll restore a little of your rebuttal time, which has been entirely used. And let's hear from Mr. Goldberg.  Good morning, Your Honors, and may it please the Court. I think that Your Honors has sort of gotten to the crux of it here. They didn't make these claim construction arguments to the board. And now what we have here is essentially just a substantial evidence case. Does substantial evidence support the board's findings on these obvious mis-issues? And it does in Appendix Pages 23, 24, 25, up into the 35 to 40 area. With respect to the selected subset issue that counsel is arguing about right now, Braybeck is what the board pointed to for the different selected subsets. It specifically identified the various censors, 20, 22, and alternate censor 42. Counselor, can I ask you, is it true that initially at the initiation stage, the board said that the selection has to occur during the milling operation, or did they simply say the switchover occurs during the milling operation? They did not say that the selection has to occur during the milling operation, anywhere in the record that I'm aware of. So you dispute the fact that counsel's claim that somehow the board changed its construction in its final written decision? Yes. And I think you'll find, Your Honor, that a lot of times the statements that counsel has been making about what is on various pages of the record in different places don't always jive with what's actually on those pages when you look at them, as we saw earlier in the discussion of where they supposedly made the argument about the erratic alterations, but it's not on those pages. All right. When I asked your friend on the other side, I said that when I read this phrase, to switch over from, then it goes on, and then it says during the milling operation, I read that to say that during the milling operation, without interruption, modify switchover, not the selection process. And he said that, no, it has to modify both because there is no other embodiment disclosed in the specification other than the selection occurring during the switchover process, or during the milling operation. Do you agree with that? No, Your Honor. In fact, our view is that there is actually no embodiment, no discussion anywhere in the specification of the 395 patent, or in the claims of the 395 patent, or in the prosecution history of the 395 patent that ever says that the selection would occur during the milling operation. If we look at the Column 2 area that Rickens Counsel is pointing to specifically-this is on Appendix Page 91 at Line 19-they pointed to the sentence where it says, a machine operator can already prepare the switchover of the sensors during the milling operation, so that the switchover of the sensors is possible at the push of a button without interruption. Okay. What line are we on again? What line are we on again? We're starting at Line 19. Okay. Column 2, Line 19. And the point is, they refer to this line about preparation, and they say that that means that you have to select the sensors during operation. But if we look up toward the top of Column 2, and actually starting at the very last line of Column 1, where it first introduces what this preparation is that's going on, it says, providing a further indication and setting unit offers the advantage that the new sensor, which is to be exchanged for the sensor currently in use, can be prepared for the time of switchover in terms of its actual and set values while the operation continues. So, the only thing in the preparation that has to be occurring during the milling is just the setting of the actual and set values. And the specification in several places actually recognizes that the sensors don't have to all be selected during milling or any be selected during milling. For example, in Column 2, at Line 16, it refers to pre-selection of the other sensor. In Column 5, it again refers to a pre-selected sensor B in Line 11, in Line 15, in Line 19. In Column 6, at Line 45, it actually says that all embodiments indicate that the set values of the pre-selected sensor B. So, they are actually quite often disclosing that it's just going to be a pre-selected sensor. It doesn't have to be selected during milling. And in fact, this shows up in the claims as well. In Claim 5, this is at Column 7 on Appendix Page 94, it talks about around Line 64, 65, a human operator may manually pre-select the replacement sensor. So, all over the place, the embodiments disclosed in the specification are actually disclosing exactly the opposite of what a victim's counsel argues. These sensors can be pre-selected. There is no requirement that they ever be selected during operation. And as far as the application-related reasons that counsel or victim premises essentially everything on, they want to make this argument that the machine operators have to be able to see what's happening down the road, and then look at it, and then make the switch during milling. The board already rejected that argument and has substantial evidence supporting its position that the application-related reasons can actually be exactly what's happening in BRABAC, that you have a sensor where you lose communication, it's a failed sensor, it's something like that, and then you just automatically do the switchover. And with respect to the erratic alteration that counsel complains the board somehow did not address, well, the board did address that. At Appendix Page 23, in-about halfway down the page, they say that, Petitioner contends that BRABAC discloses an automatic switchover to Sensor 42 without interrupting the machine operation for any erratic interruption or abrupt change in the adjustment value because BRABAC uses the last known value of Sensor 22 for alternate Sensor 42 to keep the right side in the same position. And if we look to BRABAC, and specifically at Paragraph 36, we can see exactly this language. The whole point of BRABAC is that they want to be avoiding having uncontrolled operation. And in Paragraph 36, this is on Appendix Page 981, it says, starting at the bottom of the left column, the last signal output by the alternate Sensor 42 prior to the right Sensor 22 becoming unavailable is used as a set point for the right channel of the Controller 28. And if you go a few more lines down, in other words, the alternate Sensor 42 is used to keep the right side in the same position or attitude as it was in when the primary Sensor 22 became blocked. So there's no uncontrolled operation here. There's no gap between control based on the original sensors and control based on the new sensors. That's the whole point of BRABAC. They want to be able to use it to keep the right side in the same position. And turning for a moment back to the Board's decision on Appendix Page 23, it also cites for this our expert Dr. Bevely's testimony in Exhibit 1002. Within that paragraph, it goes through Paragraphs 154 and 155, also Paragraphs 149 to 164. These are the paragraphs where our expert actually explained exactly how you take this to Davis, and with colored illustrations articulated exactly how, there ends up being no erratic alteration anywhere. Any further questions from the panel? No. No questions. Are you resting, Mr. Goldberg?  Thank you. Thank you. Mr. Ogden, will we store three minutes of rebuttal that were used? Thank you, Your Honors. I just want to make a couple points here. First, I want to clarify, we aren't arguing that the Board changed the construction. It only issued a construction early on with respect to what during the milling operation that phrase itself meant. The first time it issued a construction about selected subset was in the written decision. Also, we're not relying on reading in the embodiments from the specification. We're only relying on those as demonstrating the lens through which a skilled artisan would have viewed the claim language. The main thing I want to discuss here is, and Mr. Goldberg made a good point about this, well, I think he missed the point on this, is he's talking about switching sensors, but this patent is not about switching sensors. It's about switching control. And, again, the problem here is that the switch of control is what is required, from control to control, and that's the only way that you can avoid an erratic alteration. And so the Board's construction of selected subset does not ensure that you're going to switch to control because this moving vehicle, you will have a switch to a sensor that may or may not be functional, and, in fact, you could have a catastrophic loss of control and deviation in the adjustment value if you switch to a sensor that's not going to work for that condition. And so I think that's one of the issues of control. And then it's undisputed that there is a loss of control before the switchover occurs. And so there is no switchover from control to control. Caterpillar's expert admitted that the switchover only occurs after a sensor blackout or after a degradation of the signal. And so this combination can't meet the claims. And then, in addition, the scope of second selected subset, as it was construed by the Board, is improper because it allows for without any erratic alteration, and a skilled artisan would have understood, based on that addition to that particular claim, that was there regarding the selection of the second selected subset. And, let's see, in addition to that, we would just request that this be sent back down to the Board so we can get a true construction or true application of the proper scope of the second selected subset in view of the without any erratic alteration requirement. And considering that Brabeck's switch, and there's no dispute as to the fact that switching to a sensor that's not functional to control would result in any erratic alteration, but that aspect was not discussed in the Board's decision. Thank you, Your Honors. Thank you. We thank both sides in the case you've submitted.